THE AMERICAN RAILROAD CO. OF PORTO RICO v. ORTIZ.

APPEAL from the District Court of Mayagüez.

No. 450.—Decided April 29, 1910.

EXECUTION OF JUDGMENT—EXPROPRIATION PROCEEDINGS—REVERSAL OF JUDG-MENT—POWERS OF INFERIOR COURT.—Where the judgment of a district court in expropriation proceedings has been reversed by this court, the district court has no power to suspend the judgment rendered by this court and permit a railroad company to continue in the illegal possession of the land which it was sought to expropriate, depriving the owner of the possession thereof, while the proceedings were being had, before the Executive Council and the courts, to expropriate the land and acquire the ownership thereof, or a servitude upon the same.

ID.—POWERS OF DISTRICT COURTS AND OF THE SUPREME COURT—SUSPENSION OF JUDGMENTS.—A district court has the power to suspend execution of its judgments, when it is duly shown that there are sufficient grounds therefor, by reason of something that has been offered during the course of the proceedings or after the rendition of judgment, and the Supreme Court also has the power to suspend execution of its own judgments, in cases where it is proper so to do, for the same reasons.

EXPROPRIATION—APPEAL—RIGHTS OF PARTY IN FAVOR OF WHOM JUDGMENT IS RENDERED.—Where expropriation proceedings are brought by a railroad company against the owner of real estate and judgment is rendered therein expropriating the land, and the appellate court reverses the judgment, with instructions to the trial court to proceed in accordance with the terms of the law providing for the condemnation of private property, approved March 12, 1908, the successful litigant has a right to have the possession of the land, of which he has been deprived by the railroad company, immediately restored, and the railroad company has a right to proceed to expropriate the land by means of another proceeding properly commenced and prosecuted to termination, in accordance with the act aforesaid.

ID.—DUTIES OF TRIAL COURT.—In this particular case the court held that the district court should have ordered the marshal to put the owner of the land in immediate possesion thereof, leaving the question of damages sustained by him on account of the wrongful acts of the railroad company to be settled in future proceedings.

ID.—RIGHTS OF OWNER—PUBLIC UTILITY.—All considerations of public utility and convenience must yield to the rights of the proprietor until these rights are sustained or extinguished, in strict accordance with the law of the land.

The facts are stated in the opinion.

Mr. Manuel F. Rossy for appellant.

Messrs. F. L. Cornwell and Fernando Vázquez for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This litigation originated in the District Court of Mayagüez in a case instituted by the American Railroad Co. seeking to expropriate a strip of land belonging to Ortiz described in the complaint. Judgment having been rendered against the defendant, Ortiz, on December 30, 1908, he took an appeal to this court, and on June 18, 1909, the judgment of the trial court was reversed and the cause remanded for proceedings to be taken in accordance with the opinion therein expressed.

The attorney for Ortiz, on July 22 last, in the district court, to which the case had been remanded, made the following motion to wit:

"The defendant, by his counsel, to your honor respectfully states:

"That on June 16, 1909, the honorable Supreme Court of Porto Rico, in the case above-mentioned, rendered a final judgment declaring that the plaintiff company had no right to condemn the strip of land of the defendant referred to in said action; all of which can be seen from the certificate of said judgment appearing in these records.

"That at the same time that the plaintiff company instituted this action—1902—it first applied to this court for an injunction, and afterwards for a restraining order, and in effect a permanent injunction, until there should be finally decided (as has been the case), the action for condemnation of property; which injunction was first granted, and afterwards the restraining order.

"By virtue of said restraining order the company filing that petition took possession of the strip of land to which said condemnation proceedings referred, performing thereon the excavations, embankments, bridges, culverts and other works necessary for the building of a railway line, which it also built and operated, in which condition it is now, in spite of the judgment rendered in this case.

"The judgment rendered by the Supreme Court of Porto Rico, June 16, 1909, is a law which the parties at whose request it was rendered are bound to respect and comply with entirely and formally without any excuse whatever.

"The execution of said judgment consists in compelling the plaintiff company immediately to replace the strip of land in the condition in which it was at the moment of taking possession of the same, by virtue of the injunction granted to it on June 16, 1908, in case

No. 1925; and anything short of compelling said plaintiff company to put things back in their original condition, is, or would be, to make illusory the authority of said judgment, and, in spite of said judgment, to allow the aforesaid company to be in the possession and enjoyment of a property which does not belong to it, without having any vested interest in the same, and which legally belongs to the defendant.

"For the reasons and facts set forth your honor is requested to issue an order to the marshal of this court to require the plaintiff company immediately to put at the disposal of the defendant the strip of land which is the subject of this action, replacing it in the same condition in which it was when the said company took possession of the same on June 16, 1908."

In opposition to this motion the attorney for the railway company filed the following affidavit:

"The undersigned, having been duly sworn, states:

"1. That he is the counsel for the American Railroad Co. of Porto Rico in the action instituted by this company against Juan Ortiz Perichi before the District Court of the Judicial District of Mayagüez, in regard to the condemnation of property.

"2. That the said American Railroad Co. of Porto Rico obtained from the Executive Council of Porto Rico, on March 5, 1908, an ordinance granting to said company the right to operate a branch line from a point on its main line, between the stations of San Germán and Hormigueros, going toward the east to a point at or near the west bank of the Estero River, on the east side of the town of Sabana Grande, a distance of about 14 kilometers.

"That the said company accepted the concession specified in the foregoing ordinance, and based on it, on June 8, 1908, instituted an action against Juan Ortiz Perichi, applying for the condemnation of a strip of land belonging to him and measuring 13.985 square meters, and extending within the property of Juan Ortiz Perichi, called Hacienda Recreo, situated in the ward of Retiro, municipal district of San Germán, from a point bordering on lands of Don Pedro Acosta, on the west boundary of the property of said Ortiz Perichi, to another point bordering on lands of Angel Tió, on the east boundary of said property.

"4. That the District Court of Mayagüez, on December 30, 1908, rendered a judgment declaring Juan Ortiz Perichi permanently dispossessed of said strip of land already described, and that the Ameri-

can Railroad Co. of Porto Rico should pay to said Juan Ortiz Pe-richi the sum of $900 as the value and reasonable price of said land, and of the damages caused him by the seizure of said land.

"5. That Juan Ortiz Perichi having appealed from said judgment, the Supreme Court of Porto Rico, by judgment of June 18, 1909, revoked the judgment of the District Court of Mayagüez, ordering that a certified copy of the decision be forwarded to the District Court of Mayagüez, ordering it to proceed in accordance with the Act of the Legislative Assembly of March 12, 1908, amending the Act of March 12, 1903, providing for the condemnation of private property for the purposes and under the conditions therein named.

"6. That at present the American Railroad Co. of Porto Rico is before the Executive Council of Porto Rico, requesting that the condemnation of said strip of land, the property of Juan Ortiz Pe-richi, should be declared of public utility for the construction of the branch line referred to in paragraph No. 2 of this affidavit; which application is based on the provisions of section 2 of the aforementioned act entitled 'An Act to provide for the condemnation of private property for the purposes and under the conditions therein named,' approved March 12, 1908.

"7. That as soon as the Executive Council of Porto Rico shall declare said condemnation of the strip of land described to be of public utility the property of Juan Ortiz Perichi, the American Railroad Co. of Porto Rico will request to be allowed to amend the complaint filed against Juan Ortiz Perichi on June 8, 1908, in regard to the condemnation of said strip of land, to make it conform to the provisions of the amended section 4 of said Act of March 12, 1908, providing for the condemnation of private property for the purposes and under the conditions therein named, complying in this way with the aforementioned judgment of the Supreme Court of Porto Rico of June 18, 1909."

On August 6 the court heard the motion, and reserved its decision until the 10th of the same month. In the meantime a certain telegram, which appears to have been taken into consideration by the court below, was presented and filed by the attorney for the American Railroad Co. It reads as follows:

"F. L. Cornwell, Mayagüez. Council will grant public hearing on your application for declaration of public utility on Thursday,

August 12, at three o'clock p. m. You must submit a map or plan drawn to scale showing the location and boundaries of the property and all property adjoining, and the names and addresses of owners of adjoining property, and comply with all provisions of law. All· parties will be notified. Franchise committee has voted to report in favor of the declaration and of waiving of usual requirements under rules of the Council. (Signed) W. R. Bennett, Chief Clerk, Executive Council.''

How this telegram got into the record does not clearly appear, nor is any satisfactory reason given for its consideration in connection with the case or for any other purpose whatever.

On August 10 the district court entered the following resolution to wit:

''In this action the American Railroad Co. of Porto Rico on June 8, 1908, instituted an action for the condemnation of a strip of land belonging to the defendant, depositing, in ʻthe office of the secretary of this court the sum of $465, in compliance with section 4 of the act providing for. the condemnation of property. The hearing having taken place, the court, on January 8, 1909, rendered a judgment in favor of the plaintiff company, assessing the value of the land at $900. From this resolution the defendant appealed.

''In the meantime, on July 16, 1908, the plaintiff company applied for a restraining order against the defendant, restraining him from obstructing the company in the prosecution and maintenance of its line along the said strip of land. The action instituted by said petition bears the number 1925, civil, in the files of this court. The company deposited in the office of the secretary, first the sum of $700, and afterwards the sum of $1,000, as cash security to respond in damages to the defendant. The court issued an injunction and afterwards, on August 13, 1908, a restraining order against the defendant, until action No. 1902, in regard to condemnation of property, should be finally decided. From this resolution the defendant appealed, but later on he withdrew the appeal, and on January 15, 1909,. the Supreme Court considered the same as withdrawn. The company left the cash surety on deposit.

''Under the authority conferred by the restraining order of the court, and in view of the favorable decision given in this action—No. 1902—the company entered upon the land which was the subject

of the litigation, and built a railway line as a part of the line between San Germán and Sabana Grande, and which was opened to the public and is at present in operation.

"On June 18, 1909, the Supreme Court of Porto Rico revoked the judgment rendered by the District Court of Mayagüez, in the action No. 1902, in regard to condemnation of property, on the ground of errors of procedure in the prosecution of the suit. Now, by means of a petition presented on July 23, 1909, the defendant asked this court to issue an order to the marshal of this court to require the plaintiff company to put the strip of land, which is the subject of this complaint, immediately at the disposal of the defendant, replacing it in the same condition in which it was when the said company took possession of the same.

"The petition was argued by both sides on August 6, 1909, and counsel for the plaintiff company presented an affidavit and a telegram to show that said company is trying to obtain the condemnation of the property in the manner indicated in the judgment of the Supreme Court, and opposed the petition.

"Without stopping to consider whether the petition of the defendant could prosper in the manner in which it has been presented, or whether he had better avail himself of an injunction or action of unlawful detainer, it would be better to go to the merits of the case.

"The defendant requests that the strip of land of which the plaintiff company has taken possession should be restored to him. To grant this petition would carry along with it, as a natural consequence, the paralyzation of the passenger and freight train service, causing great damages not only to the company, but to the community and to the public at large.

"In the United States similar cases have come up, and one of the most interesting is the case of *Jacksonville, Tampa & Key West R. R. Co.* v. *Adams*, 14 L. R., old series, p. 533. In this case, in an opinion citing a great deal of jurisprudence, the Supreme Court of Florida said:

" 'Where a railroad company having the power of eminent domain, has entered upon land without the consent of the owner and without a certain material requirement of the law regulating the exercise of such power having been complied with, and there has been a judgment in ejectment in favor of the landowner against such company or its legal successor, a lessee for 90 years, and the judgment is affirmed on appeal, the appellate court may, no conduct in bad faith upon the part of the company appearing, withhold its mandate

of possession to allow a reasonable time for the institution and con-summation of new condemnation proceedings. If the new condemnation proceedings are resisted by the landowner and are dismissed by the trial court on the ground that there is not constitutional law authorizing the same, and this order is appealed from by the company, the appellate court may withhold its mandate for possession until the decision of such appeal, but it should do so only upon the express condition that its action shall not interfere with the landowner's right to sue for some profits for the use or retention of the land by the company.'

"A similar doctrine was announced in the case of *Winslow* v. *Baltimore & Ohio R. R. Co.*, 188 U. S., 660.

"In the present case, although the restraining order, on the strength of which the company entered upon the land, was not legal, as it thus appears from the decision of the Supreme Court in the similar case of the *American R. R. Co.* v. *Vicente Quiñones*, (15 P. R. Rep., 1), the judgment in which was rendered on January 11, 1909, it cannot be denied that the company took possession of the land in good faith. Under these circumstances, in view of the damages resulting to the public if the train service were stopped and in view of the fact that the company is trying to correct, by a new complaint, the defects incurred in this proceeding, it seems most equitable to follow the jurisprudence quoted in the cases above-mentioned and to suspend the execution of the order giving the defendant the possession of the land, during a reasonable time, say six months, in order to give an opportunity to the company to institute new condemnation proceedings and to legalize its occupation of the land, after which time, if the company has not done so, the defendant may apply again to be put in possession of the land. Of course, the right must be reserved to the defendant to claim damages from the company for the use of the land until its value is paid to him, and there must be sureties to secure the payment thereof.

"For the reasons stated, the petition of the defendant is denied until further notice, reserving to him the right to claim damages for the use of the land until he is paid for the value thereof. It is ordered, for better security in favor of the defendant, that out of the sum of $1,700 deposited in regard to the injunction case, No. 1925, there should be understood that the sum of $700 shall be a security to cover damages for the use of the land, and that the sum of $1,000 will secure the payment of the price of the land, making a total of $1,465, which has been deposited for the last-named purpose."

From this resolution of the district court counsel for Ortiz Perichi took an appeal to this court. A hearing was had here on January 25 last.

Although the judgment of this court rendered on June 18 last, was clearly in favor of Ortiz, the court below has undertaken to stop the execution thereof assuming control over it in the same manner as if it had been rendered in the District Court of Mayagüez. It may be that the trial judge was misled by the peculiar language used in our judgment on that occasion, to wit: "And it is hereby ordered that a certified copy of this decision and of the aforesaid opinion be transmitted to the lower court to proceed in accordance with the terms of the law of the Legislative Assembly, Approved March 12, 1908, to amend the law of March 12, 1903, providing for the condemnation of private property for the purposes, and under the conditions therein expressed."

By this direction it was not intended to delay the rendition of a proper judgment by the court below in this case and the restitution to the owner of this land, but to leave open the right of the railroad company to expropiate the land in another proceeding to be properly begun, conducted and concluded in accordance with the last law in force governing such matters, to wit, the statute of March 12, 1908.

But instead of so doing the district court undertook to suspend our judgment and to permit the railroad company to continue its illegal possession of the land and to deprive the owner of it while proceedings were being taken before the Executive Council, and perhaps elsewhere, to condemn the land and acquire a title thereto, or at least a servitude thereupon.

It is true that the court below might have suspended one of its own judgments, on proper showing made of something which had taken place pending the litigation or after the rendition of the judgment, or this court might have ordered such suspension of this judgment rendered here on June 18, 1909, for a similar reason, but it is quite a different matter for the

district court to assume to suspend the execution of a judgment of this court, and the action of the District Court of Mayagüez in presuming to take such authority cannot be tolerated.

In our view the court below has entirely misunderstood the force and effect of the Florida case from which it quotes so freely, nor does the opinion in the Winslow case justify the court in the course taken herein. More to the point is a New York case from which we will quote the entire opinion.

Dykman, J., in the Supreme Court of New York, in November, 1877, delivered an able opinion which reads as follows:

"Courts sometimes stop the execution of their judgment, in the exercise of the power and control which they have over them and over the process which goes to enforce them. Generally, however, such stays are granted by reason of something which has taken place pending the litigation, or after the rendition of the judgment. If no reason of that kind exists, the judgment must have its full force, and the party in whose favor it has gone must have all the legal remedies which are usually awarded for its enforcement. This is for the very obvious reason, that the judgment is given to the party to enable him to obtain that to which the law has adjudged him entitled. A money judgment is given to a party because a legal claim has been established, and the court will not stay the execution of such judgment and the collection thereof upon an allegation of the party against whom it exists, that he can make a settlement with the judgment creditor.

"Now, these principles are very plain, and none will dispute them, and yet it seems quite evident they have been disregarded in making the order which is the subject of this appeal.

"The plaintiff obtained judgment in this action for the recovery of a strip of land, which was in the possession of the city and used for public purposes. Thereupon the defendant, upon an allegation that it was about to condemn this land for public purposes by right of eminent domain, obtained the order appealed from, which stays the plaintiff from executing the judgment which the law has solemnly awarded, after a long litigation and a full presentation of the merits of the case. There is no claim of anything new in the case, either pending the litigation or subsequent to the judgment. The plaintiff

has the legal right to the possession of the land—the law has awarded it and the defendant wrongfully withholds it. What the defendant now says is, substantially, that it is contemplated to take this land at a forced sale, and, therefore, asks to have the plaintiff held off.

"The proceedings to condemn the land assume that it belongs to the plaintiff, and that the defendant cannot hold it without such proceedings, and it is difficult to find any principle that will allow the defendant to hold it until they are taken and consummated. If this order is right and can be maintained, then the defendant need not condemn the land at all. It has possession, and, so long as this order stands, the plaintiff cannot obtain it, and no necessity exists for the defendant to take the land or pay for it. It has it without either, and the plaintiff is powerless to interfere. This court has first made a judgment which declares the plaintiff entitled to the possession of the premises, and then without any allegation of any change in respect to the legal rights of the parties, and only on the claim that the defendant can acquire the land by purchase and thus hold it, has made an order forbidding the plaintiff to take it.

"Suppose the defendant was a private individual, and on a statement that he could oblige the plaintiff to sell him the premises at any time he saw fit to do so, should ask the court to stay the execution of the judgment, would it be done? Certainly not; and yet, how does such a case differ in principle from this?

"These considerations show very clearly that the order appealed from rests on no legal foundation and cannot stand. Order appealed from reversed." (*Strong* v. *City of Brooklyn*, 19 N. Y. Sup. Ct. Repts. [12 Hun.], pp. 453-455.)

The facts are very similar in the New York case and the one at bar; and we cannot do better than to adopt the reasoning and the conclusions arrived at by Judge Dykman and to apply them to the case under consideration.

In that case, as in this, a judgment had been rendered in favor of a party, for a strip of land wrongfully withheld from him, and he was entitled to all the legal remedies existing for its enforcement.

The city of Brooklyn which had seized the land, alleging that it was about to condemn the property for a public purpose by the right of eminent domain, obtained an order staying the owner from executing the judgment which had been

solemnly awarded in his favor; although, as in this case now pending, there was no claim that anything new had occurred in the case either pending the litigation or subsequent to the judgment. In the New York case, as in this, the corporation contemplated taking the land away from the owner by a forced sale and requested the court to stop him from asserting his rights until it was able to perfect its claim. We agree with that court, that if such a proceeding could be maintained there would be no need to condemn the land at all. Having possession, all the railroad company would have to do would be to secure the continuance of the restraining order, without an expropriation of the land or the payment of any money for it. Such an order rests on no legal foundation and should not be suffered to stand.

And we may also refer to an opinion of this court, expressed by our Chief Justice, in a very recent case, in which he says:

"Certainly, under the Law of March 12, 1903, it was not the province of the Executive Council to designate the land which, by reason of public utility, should be condemned, and for that reason the ordinance of March 5, 1908, herein above-transcribed, could not contain the description of such land; but as the condemnation proceedings were instituted by the plaintiff on June 8, 1908, and had to be followed, therefore, in accordance with the provisions of the Law of March 12, 1908, among which provisions there is one requiring that a copy of the declaration of public utility made by the Executive Council, describing specifically the property which is to be condemned or encumbered, shall be inserted in full in, or shall accompany the complaint, it is evident that if the plaintiff had already a declaration of public utility made in his favor with regard to the branch under consideration, when the Law of March 12, 1908, came into effect, said plaintiff should have applied to the Executive Council before bringing his action on June 8 of the same year, and should have requested that body to complete the declaration formerly made by the same, so as to describe thereby the land which should be condemned, and after that requirement had been complied with, then it was the proper time to file the complaint, including therein the declaration of public utility in full, or attaching thereto a copy of

said declaration containing the description of the land which was the subject of the condemnation proceedings, thus complying with the requirements of the law.

"In the opinion delivered in the case of the *School Board of Carolina* v. *José E. Saldaña et al.* (14 P. R. Rep., 339), brought under the régime of the Law of March 12, 1903, and decided on April 22, 1908, when that law had already been amended by the Law of March 12, 1908, we stated that it was not possible to hold that the school board in said case, or a railroad company, or other corporation, in other cases, should have the unquestioned right, from caprice, malice, or other improper motive, to arbitrarily seize upon the property of a citizen and to condemn it when there is other property more convenient and suitable which could be had possibly for less money, and without resorting to expropriation proceedings; and we used this language with regard to the law of eminent domain of March 12, 1903, which had no provision whatever in connection with the right of the parties concerned to oppose the expropriation proceedings.

"The Law of March 12, 1908, now in force, has supplied the omissions of the former law by prescribing that all parties which may have an interest in the matter must be heard with regard to the declaration of public utility and as to the necessity of the condemnation, and that the Executive Council on making the declaration, that a certain work is of public utility, shall describe specifically the property which is to be condemned, and only in case the owner of the property refuses to consent to such condemnation is it incumbent upon the court of Mayagüez to determine, in the proper proceedings, whether or not the plaintiff had a right to condemn the property already fixed and described by the Executive Council, in accordance with section 6 of the Law of March 12, 1903, as amended by section 4 of the Law of March 12, 1908.

"But the law of eminent domain of March 12, 1903, does not favor, either, the contentions of the plaintiff and appellant herein, because said law does not confer upon the railroad companies the right to select the lands which may be convenient for their purposes, and the necessity for the expropriation sought to be obtained by the plaintiff company in this case, has not been shown, either.

"In support of the foregoing we may cite the following cases decided by this Supreme Court: (*School Board of Carolina* v. *José E. Saldaña et al.*, [14 P. R. Rep., 339], decided April 22, 1908; *The American R. R. Co. of Porto Rico* v. *Vicente Quiñones,* [15 P. R. Rep.,

1], decided January 11, 1909; *The American Railroad Co. of Porto Rico v. Juan Ortiz,* [15 P. R. Rep., 412], decided June 18, 1909.)

"We deem it idle to discuss the point covered by the judgment regarding the indemnity or compensation, which has been opposed also by the appellant, for the reason that if the expropriation does not lie, it is useless to discuss the amount of the indemnity that should be paid." (*The American Railroad Co. v. Quiñones,* [15 P. R. Rep., 1] decided March 8, 1910.)

Our opinion rendered in the present case, when it was before us on the former appeal, was clear and unequivocal and should have been immediately followed. We said on that occasion:

"It is true that that law was not in force on March 5 of last year when the Executive Council granted the franchise referred to in the complaint; but the same was in force on the date when the complaint was filed and on the 19th of said month of March when said franchise began to have legal effect.

"The law of eminent domain of March 12, 1903, as amended by the Law of March 12, 1908, does not favor the contention of the plaintiff and respondent, for that law does not grant to railway companies the right to choose the lands which they may require and which, in their opinion, ought to be condemned.

"In the case of the *School Board of Carolina v. José E. Saldaña et al.,* [14 P. R. Rep., 330], decided by this Supreme Court on April 22, 1908, in spite of the fact that the building of a schoolhouse was declared of public utility previous to the date when the Law of March 12, 1908, came into force, we revoked the judgment of the court below, with instructions to proceed in accordance with said law and in conformity with the opinion on which the judgment was based. In another case involving the same party, *The American Railroad Co. of Porto Rico v. Vicente Quiñones,* [15 P. R. Rep., 1], decided January 11 of this year, we made reference to the principles set forth in said opinion. If those principles had been taken into consideration by the court below, examining, to that effect, both cases, it seems to us that the judgment which has brought about this appeal would not have been rendered.

"We deem it unnecessary to enter into an examination of the evidence relating to the assessment of the land in question, for, if the condemnation proceedings are improper, it is idle to discuss the amount of the indemnity to be granted."

This decision was based on the case of (*Saldaña* v. *The School Board of Carolina* [14 P. R. Rep., 339], decided April 22, 1908, and on the case of *The American Railroad Co. of Porto Rico* v. *Quiñones* [15 P. R. Rep., 1], decided January 11, 1909,) in the latter of which cases we use in the opinion the following language:

"It is not enough that the railroad company has taken the proceedings which are set out in its petition for injunction, to entitle it to take possession of the land belonging to a citizen of Porto Rico, or any other person, and eject him therefrom and construct thereon a roadbed and other works necessary to the operation of a railway; but the company must first secure a decree of a competent court expropriating the land proposed to be taken and fixing the amount of the compensation and damages which should be paid therefor; and further, such amounts thus ascertained must be actually paid to the owner of the land before the railroad company sets foot on the premises, for any other purpose than making a preliminary survey. Such is the law in the United States where the rights of property are protected by constitutional enactments, and such is the law in this Island under our existing statutes.

"The plea, made by the company and adopted by the court below, that it is for the public benefit that the construction of the railroad should not be obstructed or delayed, and that the rights of the individual should yield to the public benefit, is not sound nor in the least worthy of consideration. We live under a government of law, and the rights of each individual citizen, in his person, his property and his reputation, must be protected from invasion by any other person, under any pretext whatever. If the community demands that the individual shall yield his property to be used for the public good, the law points out the method in which this sacrifice shall be made; and it is the bounden duty of all persons, natural and artificial, railroad companies, men, courts, and the Government itself, to track the law."

Then the District Court of Mayagüez should have ordered the marshal to put the owner of the land, Juan Ortiz Perichi, into immediate possession of his land, leaving the question of damages sustained by him on account of the wrongful acts of the railroad company, to be settled in future proceedings.

The railroad company, if it desires to acquire the land involved herein, or a servitude upon it, should begin its proceedings by an expropriation suit, in accordance with the expropriation act now in force, and "track the law" laid down for the guidance and control of such corporations, when they attempt to acquire the property of a citizen against his will. All considerations of public utility and convenience must yield to the rights of the proprietor, until those rights are suspended or extinguished in strict accordance with the law of the land. "This principle, in American Constitutional Jurisprudence, is founded in natural equity, and is laid down by jurists as an acknowledged principle of universal law." (2 Kent's Com., 339; 2 Story on Cons., sec. 1790.)

Accordingly the order rendered by the District Court of Mayagüez on August 10 last should be reversed and annulled and the case remanded to the District Court of Mayagüez with explicit instructions to command its marshal to put the owner into possession of his land, proceeding therein in accordance with this opinion and the judgment of this Supreme Court.

*Reversed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice Figueras did not take part in the decision of this case.